RENDERED: APRIL 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0030-MR

VIVIANE RENOT                                          APPELLANT

v.               APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 16-CI-01853

SECURA SUPREME INSURANCE
COMPANY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: The Kentucky Supreme Court remanded this matter for a new trial in *Renot v. Secura Supreme Insurance Company*, 671 S.W.3d 282 (Ky. 2023). The second jury trial yielded the same outcome as the first: judgment for Secura Supreme Insurance Company. Viviane Renot once again appeals. We affirm.

## BACKGROUND

The Supreme Court detailed the substantive background in *Renot*, 671 S.W.3d at 285–87. For purposes of this appeal, it suffices to say this matter stems from a motor vehicle accident, and the primary issue is the role the accident played in Renot's subsequent health issues, *i.e.*, causation. In Renot's first appeal, the Supreme Court remanded after concluding, *inter alia*, Secura's expert witness, Matthew Porta, PhD, testified to matters outside his expertise of biomechanics. The high court held:

> [T]he trial court erroneously allowed Dr. Porta's trial testimony to contravene its own pretrial rulings. Over multiple objections, Dr. Porta was permitted to offer testimony on behalf of Secura regarding the cause of Renot's right knee condition. Such testimony crossed over into medical causation testimony and impermissibly invaded the province of physicians.

*Renot*, 671 S.W.3d at 289. It remanded for a "new trial free from improper testimony[.]" *Id.* at 291.

After a second trial, the jury once again returned a verdict in favor of Secura, and the trial court entered judgment accordingly. The trial court denied Renot's motion seeking a new trial, and this appeal followed. We develop additional background as necessary.

# ANALYSIS

Renot argues the trial court erred in four ways: (1) by allowing certain testimony from Dr. Porta, resulting in a "trial by ambush"; (2) by failing to perform the requisite analysis following a *Batson* challenge; (3) by failing to strike a juror for cause; and (4) by not allowing Renot to call Secura's corporate representative as a witness. We address each argument in turn.

> I.    *Renot failed to render contemporaneous objections to the portions of Dr. Porta's testimony she challenges on appeal*.

Renot argues the trial court again erred regarding Dr. Porta's testimony. She says the court erred failed "to exclude defense expert Porta, or otherwise enter an Order limiting his testimony as required by *Renot*, 671 S.W.3d 282." But the Supreme Court did not require the trial court to exclude Dr. Porta altogether. It required that Dr. Porta be made to restrict his expert testimony to his expertise. Renot does not allege Dr. Porta testified on remand to medical causation, the testimony the high court found impermissible. Instead, she objects to Dr. Porta's testimony about matters "never disclosed in his expert disclosure, answers to expert interrogatories, his expert deposition, or even in his Trial 1 testimony, resulting in trial by ambush." (Appellant's Br. at 4.)

Regarding expert testimony:

> Appellate courts give great deference to trial court rulings related to expert testimony, reversing only when an abuse of discretion is clear. *Toyota Motor Corp. v.*

-3-

*Gregory*, 136 S.W.3d 35, 39 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "An abuse of discretion exists only when we are 'firmly convinced that a mistake has been made.'" *Rossi v. CSX Transp., Inc.*, 357 S.W.3d 510, 515 (Ky. App. 2010) (quoting *Overstreet v. Overstreet*, 144 S.W.3d 834, 838 (Ky. App. 2003)). "Even then, reversal is unwarranted unless the error is not harmless; that is, unless corrected, the error would prejudice the substantial rights of a party." *Id.*

*Renot*, 671 S.W.3d at 288.

Renot contends Dr. Porta's expert witness testimony ventured into "15 new areas" not properly disclosed. (Appellant's Br. at 8.) She identifies these 15 discrete "areas" in her opening brief. (Appellant's Br. at 10-11.) Secura contends Renot failed to render contemporaneous objections to Dr. Porta's testimony in these "areas," and thus failed to preserve this issue for appellate review. We agree.

Pursuant to KRE[1] 103(a)(1), admission of evidence cannot constitute error unless "a timely objection or motion to strike appears of record[.]" *See Dickerson v. Commonwealth*, 174 S.W.3d 451, 471 (Ky. 2005) ("There were no contemporaneous objections to any of th[e] testimony; thus, this issue is not preserved for appellate review"). Renot's brief indicates she did not object for the first 50 minutes of Dr. Porta's testimony and only when he referenced an article by

---

[1] Kentucky Rules of Evidence.

Joe Cormier. At the bench conference, Renot's counsel objected to testimony regarding Mazda crash tests, prompting the trial court to inquire: "What are you objecting to? The prior testimony? Or the question on the floor about the peer-reviewed [Joe Cormier] study?" Video Record (VR) 10/30/24 at 4:12:40 PM. When Renot's counsel clarified that he was objecting to previous Mazda crash test testimony, the trial court observed: "That was some time ago." VR 10/30/24 at 4:13:15 PM. The trial court accepted defense counsel's contention the Mazda crash tests were disclosed in discovery as a basis for Dr. Porta's opinions, and overruled the objection stating: "one, [Renot] didn't object when the question was on the floor, and two, this information was produced to you, and you didn't ask him about it in his deposition."

Renot did not make a contemporaneous objection to any of Dr. Porta's testimony she now challenges on appeal. Any errors regarding the challenged testimony are unpreserved. The Court is authorized, but not required, to review unpreserved errors for palpable error that otherwise would result in a manifest injustice. *R.V.K.H. v. S.M.S.*, 678 S.W.3d 648, 650 (Ky. App. 2023); CR[2] 61.02. Not all errors are "palpable." "[P]alpable error . . . [is] composed of two elements: obviousness and seriousness." *Webb v. Commonwealth*, 387 S.W.3d 319, 329 (Ky. 2012). Renot failed to request palpable error review and failed to apprise us of any

---

[2] Kentucky Rules of Civil Procedure.

obvious and serious error committed by the trial court that created a manifest

injustice.[3]  This argument fails.

> II.    *Renot failed to allege any facts or circumstances sufficient to raise an inference that Secura used its peremptory strike on Juror 4108 on account of the juror's race*.

Next, Renot argues the trial court failed to conduct the proper analysis

under *Batson v. Kentucky*, 476 U.S. 79, 84, 106 S. Ct. 1712, 1716, 90 L. Ed. 2d 69

(1986), despite her challenge of Secura's peremptory strike of an African-

American petit juror, Juror 4108.  We find no error here.

> In *Batson*, the U.S. Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause.  First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question.  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Commonwealth v. Snodgrass*, 831 S.W.2d 176, 178 (Ky. 1992) (citations omitted).

---

[3] We note Renot has not requested palpable error review.  "Ordinarily, when an issue is unpreserved at the trial court, this Court will not review it unless a request for palpable error review . . . is made and briefed by the appellant."  *Webster v. Commonwealth*, 438 S.W.3d 321, 325 (Ky. 2014).  Although *Webster* discussed palpable error review under the criminal rule, [Kentucky Rules of Criminal Procedure] RCr 10.26, "The language of CR 61.02 is identical to its criminal law counterpart, RCr 10.26, and we interpret that language identically."  *Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018).

More recently, in *Clapp v. Van Horne*, this Court explained *Batson* in the context of a medical malpractice action, stating:

> Under *Batson*, a prima facie case is established by showing each of the following elements:
>
>> [1] that [the defendant] is a member of a cognizable racial group . . .
>>
>> [2] that the prosecutor has exercised peremptory challenges to remove from the [jury pool] members of the defendant's race . . . [and]
>>
>> [3] that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the [potential jurors] from the petit jury on the account of their race.
>
> *Batson*, 476 U.S. at 96, 106 S. Ct. 1712.

621 S.W.3d 159, 163 (Ky. App. 2021).

*Clapp* further explained that "the Supreme Court in *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), 'modified the *Batson* prima facie case to allow a defendant to raise a *Batson* violation even if he is not of the same race as the excluded juror.'" *Id.* (quoting *United States v. Odeneal*, 517 F.3d 406, 419 (6th Cir. 2008)). Thus, the first two elements of the prima facie showing have become presumed nominal elements because every person—and so every member of the petit jury—is a member of a cognizable racial group, and there is no longer a requirement the stricken juror and the party challenging the strike share the same race. The import is that the third element prevails and "[t]he

U.S. Supreme Court indicated a confidence in trial judges and recognized a broad discretion in them to determine whether, *under all the circumstances*, a *prima facie* showing of discrimination had been made." *Id.* (quoting *Commonwealth v. Hardy*, 775 S.W.2d 919, 920 (Ky. 1989)) (emphasis added).

Renot presents nothing more than "that Juror 4108 was an African-American juror." (Appellant's Br. at 20.) Even in her reply brief, Renot does not present any "facts and any other relevant circumstances" that "raise an inference" Juror 4108 was excluded "on the account of [his/her] race." *Clapp*, *supra*. And before failing to allege these necessary pertinent facts and circumstances in this Court, she first failed to do so in the trial court.

The trial court did not err by denying Renot's *Batson* challenge.

### III. *The trial court did not abuse its discretion in denying Renot's motion to strike Juror 4140 during the trial*.

Next, Renot argues the trial court erred in failing to strike for cause a different juror, Juror 4140. "A trial court's decision whether to remove a juror from a panel that has already been seated is reviewed for abuse of discretion." *Lester v. Commonwealth*, 132 S.W.3d 857, 863 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* Although the vast majority of our case law addresses for-cause challenges in criminal matters, the same standard applies in civil matters. Just as RCr 9.32 recognizes it may "become necessary to

excuse a juror," so too does CR 47.02 (*i.e.*, "Should it become necessary for any reason to excuse a juror . . .").  Necessarily,

> this must refer to excusing a juror for cause during trial once it becomes evident that the juror is not qualified to sit.  Though this practice is often referred to as designating the juror as the alternate, that is not what it is; otherwise, such a juror could be subject to recall if another member of the jury became unable to sit.  *See* RCr 9.32(2).  Instead, what technically happens when the juror is disqualified, even in the middle of trial, is that he is struck for cause.  This is what the trial judge did in this case.

*Nunley v. Commonwealth*, 393 S.W.3d 9, 14 (Ky. 2013).  Renot moved the trial court to designate Juror 4140 as the alternate, which the trial court properly construed as a motion to strike the juror for cause.

The trial court did not abuse its discretion in denying the motion.  In the middle of trial, Juror 4140 alerted the trial court to an interaction she had with Renot the previous day.  VR 10/30/24 at 1:00:50 PM.  She stated that Renot had approached her and some of "the girls" (*i.e.*, other jurors) while they were standing in a hallway in the courthouse, and asked if they were all just "standing [there]." Juror 4140 stated they moved away from Renot and did not answer, and that Renot walked away.  Juror 4140 said that was the extent of the interaction.  Juror 4140 stated this episode was "bugging" her because "that's not what we're supposed to do."  She stated it would not impact her ability to be fair and impartial in the case, and that she "wanted to make sure somebody knew in case it was a problem . . .

-9-

because if I hadn't said anything, then I would be worried that maybe [Renot] would say something later like, 'Oh, well they talked to me,' or . . . [trails off]."

The trial court then asked Renot about her interaction with the jurors. She said she approached nobody, and that she had not spoken to anyone.

The trial court then examined two other jurors who were potentially present, Juror 4735 and Juror 4843. Juror 4735 stated Renot approached her and asked, "Are you all waiting here?" When asked whether it would affect her ability to be fair and impartial, Juror 4735 said it would not.

Juror 4843 said Renot spoke to her in the hallway and told her, "If you're a juror, you go that way," and stated Renot was "just pointing me in the right direction." Asked whether the interaction would affect her ability to be fair and impartial, Juror 4843 responded, "Oh goodness, no."

After examining Juror 4843, the trial court concluded the interactions were "innocuous" and invited any motions. None were made.

The next morning, however, Renot moved to strike Juror 4140. VR 10/31/24 at 8:34:00 AM. Renot's counsel suggested she be made an alternate based on her comment that the interaction between the juror and Renot had been "bugging" juror. In denying the motion, the trial court construed Juror 4140's statements as Juror 4140's concern she could get in trouble if it appeared she

engaged Renot, rather than Renot engaging her, and it was that concern, not Renot herself, that had been "bugging" the juror.

Renot cites *Deemer v. Finger*, 817 S.W.2d 435, 436 (Ky. 1990), to support her argument. But that case involved a juror obtaining extrajudicial information about the case from her husband. There is no allegation Juror 4140 obtained extrajudicial information. There are no reasonable grounds to believe Juror 4140 could not be fair or impartial. We find no error here.

IV. *The trial court did not err in excluding irrelevant testimony from Secura's corporate representative*.

Finally, Renot argues the trial court erred in excluding testimony from Secura's corporate representative, which Renot sought pursuant to CR 30.02(6). That rule authorizes the deposition of a corporation, which must designate at least one corporate representative to testify as to the matters noticed. We do not see, and Renot does not explain, how that rule furnishes an inviolate right to call a corporate representative at trial.

Beyond that, Renot also makes no effort to explain what testimony she sought to elicit, or how her case was otherwise prejudiced by the trial court's exclusion. *See* CR 61.01 (*i.e.*, the "harmless error" rule). As an alternative, Renot sought 6 stipulations, and the trial court repeatedly questioned the relevance of facts Renot sought to establish. VR 10/29/24 at 12:00:00 PM. Renot's counsel struggled to articulate relevance. The trial court ruled the first four proposed

stipulations/areas of testimony sought were irrelevant.  The trial court ruled the fifth stipulation/area of testimony pertained to medical causation the corporate representative would not be qualified to furnish.  The parties negotiated a stipulation regarding the sixth stipulation/area of testimony.  Renot furnishes no basis for reversal based on the trial court's exclusion of the testimony sought.

Renot's argument is unpersuasive.  We find the trial court did not err.

## **CONCLUSION**

Based on the foregoing, the December 9, 2024, judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sandra M. Varellas
D. Todd Varellas
Jeremy V. Prichard
Lexington, Kenutcky

BRIEF FOR APPELLEE:

Ashley K. Brown
Graham D. Barth
Lexington, Kentucky